UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROUMANN CONSULTING INC., and
RONALD ROUSSE,

      Plaintiffs,

  v.                                     Case No. 17-CV-1407

T.V. JOHN & SON, INC., and
THE KROGER CO.,

      Defendants.

## PLAINTIFF ROUMANN CONSULTING INC.'S
## REPLY IN SUPPORT OF ITS MOTION TO WITHDRAW FUNDS

Defendant T.V. John & Son, Inc.'s ("T.V. John") primary response to Roumann Consulting, Inc.'s ("Roumann Consulting") motion to withdraw funds is that the final amount of the Net Profit Realized payable to Roumann Consulting "has not yet been determined." (DN 101, pp.1–2.) T.V. John argues that the commission amount due cannot be calculated because it has "a contractual right to maintain a reserve" and that the "amount owed is also subject to a reduction if warranty work is included on a project following completion." (*Id.* at p.2.)

To support this argument, T.V. John filed a short three-paragraph declaration from David Schlidt with its response brief. (DN 102.) Mr. Schlidt's declaration makes no mention of a change in the reserve requirement (which is mentioned solely in the response brief only, without support). Mr. Schlidt's

declaration states that he believes Roumann Consulting will be due only $178,425 when warranty work is considered. (DN 102.)

This new commission calculation is sixty percent (60%) less than the calculation provided by T.V. John's only damages expert, Mark Kuhn, on July 15, 2019. Mr. Kuhn's expert report and September 12, 2019 deposition testimony, which were based upon Mr. Schlidt's accounting data, were used as the basis for Roumann Consulting's motion. (*See* DN 100, pp.2–3; *see also* DN 93-11, p.5, DN 93-16.) Although T.V. John's is correct that a $45,000 reserve may be maintained, this was not included in Mr. Kuhn's damage calculation. Mr. Kuhn also already included a large set-off for warranty work.

Mr. Schlidt makes this assertion without providing any explanation for changing Mr. Kuhn's math, and provides no back up, either. (DN 102.) He just makes the assertion in a single sentence, without any detail.

This is an extraordinary and odd strategy, as Mr. Schlidt is contradicting his own expert's report and conclusion, based upon Mr. Schlidt's own data, even though he was not disclosed as a lay or expert witness by T.V. John. ( DN 25 (T.V. John's lay witness disclosure; DN 93-11 (T.V. John's expert witness disclosure).) Worse, Mr. Schlidt is contradicting his prior testimony, provided in the form of a summary chart produced during T.V. John's Rule 30(b)(6) deposition (Halloin Aff. Ex. A), as well as his prior declaration submitted (after the discovery cut-off) as part of T.V. John's second summary judgment motion filed on July 29, 2019. (DN 83.) Mr. Schlidt is also contradicting three earlier computations of Roumann Consulting's

2

commissions that he prepared in this case. (Halloin Aff. Exs. B, C.) As explained in the last section of this reply, Mr. Schlidt is also contradicting T.V. John's summary judgment position.

The only questions raised by Mr. Schlidt's November 20, 2019 declaration are whether it should be afforded any weight at all, and if so, the implications of putting weight on that declaration.

I. THE COURT SHOULD EITHER PRECLUDE MR. SCHLIDT FROM PROVIDING EXPERT TESTIMONY, AS HE WAS NOT DISCLOSED AS AN EXPERT, OR PRECLUDE MR. KUHN FROM TESTIFYING AS AN EXPERT REGARDING HIS JULY 12, 2019 REPORT AND RELATED OPINIONS, BECAUSE THEY ARE INCONSISTENT WITH MR. SCHLIDT'S NOVEMBER 20, 2019 DECLARATION.

A. Roumann Consulting's Motion Is Based Upon Mr. Kuhn's Expert Report and Testimony, Which is Based Upon Mr. Schlidt's Own Data.

Roumann Consulting's motion was based upon the report of T.V. John's sole disclosed expert, Mark Kuhn. (DN 93-11.) In his report, Mr. Kuhn concluded that "[i]f anything is owed to Roumann, the estimated amount of commissions owed . . . is $401,875." (DN 93-11, p.9.)

At his September 12, 2019 deposition, Mr. Kuhn confirmed that this calculation is accurate, truthful, and opined to a reasonable degree of probability given the standards of his profession. (DN 93-16, 9/20/2019 Halloin Aff. Ex. 16, 9/12/2019 Kuhn Dep. 84:21–14.) Mr. Kuhn's report is based upon the production made by Mr. Schlidt, and in his report, Mr. Kuhn confirms he accuracy of Mr. Schlidt's accounting data, with some minor modifications. (*See* DN 93-11, pp.7–9.)

Mr. Kuhn did indicate that his report might need to be amended before trial, but he stated the reason as follows:

> It is our understanding that certain of the in-process projects have potential change orders that are still being negotiated. The amount of commissions due on projects in process are subject to revision for change orders and if actual net profits on projects in process are different than estimated and/or if any additional projects to the specified customers are accepted by TV John through September 20, 2019.

(DN 93-11, p.9.)

Not included in the possible reasons for amending his report are possible warranty work, or the contractual right to maintain a reserve (the two changes now asserted by T.V. John in its response brief). That is because Mr. Kuhn's $401,875 damages estimate already included a reduction of $69,770 for "estimated costs" and $80,772 for "warranty work". (DN 12-2, p.10.) Over and above this $401,875 amount, T.V. John is also holding an aggregate reserve of $45,000 "on all uncompleted commissioned projects" (DN 12-2, p.10.) As such, Mr. Kuhn's estimate of $401,875 already contained a healthy hold back of $195,542 for the contingencies identified in T.V. John's November 20, 2019 response brief.

### B. Mr. Schlidt's Declaration Attempts to Change Mr. Kuhn's Expert Opinion, or Provide a New Expert Opinion, Are Improper.

On January 12, 2018, when T.V. John filed its Rule 26(a)(1) disclosures, Mr. Schlidt was not even listed as a fact witness. (DN 25.) On July 12, 2019, when T.V. John disclosed expert witnesses, Mr. Schlidt was (again) not listed. (DN 93-11.)

Mr. Kuhn is T.V. John's only expert and his report was produced on July 15, 2019—on the sole topic of commissions owed. (DN 93-11.) Mr. Kuhn was deposed as recently at September 12, 2019, just two months ago. If T.V. John wanted to amend Mr. Kuhn's July 15, 2019 expert report or Mr. Kuhn's subsequent September 12, 2019 deposition testimony, there is a process for doing so under Rule 26(e)(2). What T.V. John is attempting to do is amend Mr. Kuhn's opinion without actually providing the disclosure from Mr. Kuhn needed by Rule 26(e), which clearly states that "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." No effort has been made to amend Mr. Kuhn's expert report or deposition testimony under Rule 26(e)(2), or provide supporting documentation for an amendment/change.

Instead, T.V. John presents the November 20, 2019 declaration of Mr. Schlidt, which simply tosses out a lower number damage number of $178,425 to Mr. Kuhn's $401,875. (DN 102.) Mr. Schlidt's declaration provides no explanation of his calculation, and does not explain why an additional $223,450 should be withheld to cover warranty work, when Mr. Kuhn had already reserved a healthy $195,542 for such items over and above his $401,875 damage estimate.[1] Despite the report's many flaws, Mr. Kuhn at least included a partial disclosure of his mathematical calculations and sources. (DN 93-11, pp.23–24.) Mr. Schlidt provides none—just a sentence with a different commission number. (DN 102.) In doing so, T.V. John has

---

[1] Plaintiffs believe Mr. Kuhn's report is based upon flawed math and assumptions, and have submitted three expert reports of their own. (DN 69.)

deprived Plaintiffs of the required correction of Mr. Kuhn's report, and the required correction of Mr. Kuhn's deposition testimony.

Discovery has closed in this case. No effort was made by T.V. John to seek permission to amend its lay or expert disclosures, either. Worse, Mr. Schlidt's November 20, 2019 declaration makes no effort to lay the foundation for a lay expert opinion under Federal Rule of Evidence 701. Mr. Schlidt's declaration also is pretty clearly intended to present an alternative expert opinion on commission damages, but T.V. John makes no effort to comply with Federal Rule of Evidence 702, either. Mr. Schlidt makes no disclosure of his facts, data, principles or methods, nor is any foundation provided proving that those principles and methods have been reliably applied.

Substantial discovery took place in this case before the discovery cut-off, including a Rule 30(b)(6) deposition on damages. Ironically, Mr. Schlidt was produced as the Rule 30(b)(6) witness and provided the information upon which Mr. Kuhn's report is based. (Halloin Aff. Ex. A.) Not a single discovery response, Rule 30(b)(6) disclosure, or change to Mr. Schlidt's Rule 30(b)(6) binding testimony has been disclosed or made. No supplemental documents have been provided, either.

### C. If the Court Intends to Consider Mr. Schlidt's November 20, 2019 Declaration, It Should Strike Mr. Kuhn's July 15, 2019 Expert Report.

What is clear is that T.V. John wants to move away from Mr. Kuhn's opinion. T.V. John signaled this desire weeks ago, shortly after Plaintiffs demanded a release of the funds on deposit with the Court. As part of its reply in support of its second motion for summary judgment, T.V. John admitted (in response to Roumann

6

Consulting's proposed finding relating to Mr. Kuhn's damage figures) that Mr. Kuhn's numbers have "no bearing on any commission that may be owed to Plaintiffs." (T.V. John's Response to SAF 55, DN 98, p.32 .)

Plaintiffs believe that T.V. John should not be permitted to change its expert damage calculation and still keep its damages expert and report in place, at least without following proper procedure. If the Court denies Roumann Consulting's motion to release funds based upon Mr. Schlidt's November 20, 2019 declaration testimony, then Plaintiffs submit that Mr. Kuhn's expert report should be struck, and Mr. Kuhn should not be allowed to testify regarding any conclusions in his July 2019 report, given that T.V. John now believes those opinions to be incorrect and have "no bearing."

## II. IF THE COURT PLACES ANY WEIGHT ON MR. SCHLIDT'S NOVEMBER 20, 2019 DECLARATION, THEN IT SHOULD STRIKE MR. SCHLIDT'S INCONSISTENT JULY 29, 2019 SUMMARY JUDGMENT DECLARATION, DENY T.V. JOHN'S PENDING SUMMARY JUDGMENT MOTION, AND IMPOSE SANCTIONS AGAINST T.V. JOHN.

T.V. John asks this Court to consider the new, November 20, 2019 declaration of Mr. Schlidt (DN 102), knowing that this declaration contradicts Mr. Schlidt's earlier declaration submitted on July 29, 2019 (DN 83) in support of T.V. John's (now fully briefed) second motion for summary judgment (DN 79–DN 80) and proposed findings of fact (DN 81).

T.V. John's July 29, 2019 motion for summary judgment was, by sheer size, a huge undertaking, with 108 proposed findings. It was supported by an attorney's declaration and two fact witness declarations, one of which was Mr. Schlidt's

declaration. (DN 82–DN 84.) Many of the motion's proposed findings of fact were simply the recitation of contract clauses, but there were some actual proposed facts, and those based upon Mr. Schlidt's declaration were prominently featured. (*See, e.g.,* PFF 42-45, 56 and 108, DN 81.) Notably, proposed finding of fact number 108 was based upon earlier damage computations by Mr. Schlidt. (*See* DN 81, p.9 n.4; DN 81, p.17.)

In his July 29, 2019 declaration (DN 82), Mr. Schlidt basically gave a summary of the financial data used in Mr. Kuhn's damage estimate and report. Mr. Schlidt stated "$2.8 million" of Net Profit Realized "is allocated to Roumann or Rousse under the profit-sharing structure outlined in the Offer of Employment and the Independent Contractor Agreement." (DN 83, ¶ 3.) Mr. Schlidt then stated that commissions are owed of approximately $400,000. (*Id.* ¶ 5.) Mr. Schlidt's July 29, 2019 declaration is only five paragraphs long, and <u>all</u> paragraphs are devoted to his explanation of the commission calculation. It was the only reason the declaration appears to have been filed.

Notably, Mr. Schlidt's July 29, 2019 summary judgment declaration made no mention of the need for additional set-offs for the various contingencies his November 20, 2019 declaration now apparently contends should be made. (DN 102.) Although Mr. Schlidt's November 20, 2019 declaration now provides a different damages figure, he provides no explanation for why his July 29, 2019 damage analysis and the assumptions in Mr. Kuhn's expert report, based upon Mr. Schlidt's numbers, have changed.

8

If this Court denies the current motion to release funds based upon Mr. Schlidt's revised commission calculation submitted on November 20, 2019, then it should also strike Mr. Schlidt's July 29, 2019 inconsistent summary judgment declaration and all related proposed findings of fact. Of course, without this, the Court should also deny T.V. John's motion for summary judgment as it lacks sufficient findings for such relief.

Respectfully, this was also a pretty transparent, and shameless, move. T.V. John's reply brief in support of its second summary judgment was filed on October 21, 2019. The ink on that brief had barely dried when Mr. Schlidt's November 20, 2019 declaration was filed, essentially asking for a "Mulligan" on Mr. Schlidt's July 29, 2019 calculation, upon which Mr. Kuhn's July 15, 2019 expert report and testimony were based. It is difficult to conceive of some event that could cause a 60% reduction in the commission owed just 30 days after that October 21, 2019 reply was filed, particularly since T.V. John has also taken the position that the quality and extent of its own project management team has no bearing on the commissions owed to Plaintiffs. (T.V. John's Response to SAF 76, DN 98, p.46.) T.V. John seemed more than content to let the Court consider Mr. Schlidt's July 29, 2019 declaration and Mr. Kuhn's report—until Roumann Consulting asked for the release of the funds being held based upon Mr. Kuhn's report and deposition testimony.

Respectfully, this is part of a concerted effort to starve out the Plaintiffs. Commissions had always been paid by T.V. John on a monthly basis, pre-

termination. Plaintiffs have not been paid a commission for two and a half years now, and commissions are owed for projects finished two years ago or more. Responding to T.V. John's lengthy second summary judgment motion (based upon what T.V. John now apparently believes was an incorrect affidavit and proposed findings) was an expensive proposition, as was the deposition of Mr. Kuhn on September 12, 2019, regarding an expert opinion that T.V. John now contends is incorrect and has "no bearing."

If the Court is inclined to consider Mr. Schlidt's November 20, 2019, under the circumstances, Plaintiffs submit that a monetary sanction for the cost of briefing that the summary judgment motion and Mr. Kuhn's deposition is appropriate.

### III. MR. SCHLIDT'S NOVEMBER 20, 2019 DECLARATION IS A SHAM DECLARATION AND SHOULD BE DISREGARDED.

In addition to his July 29, 2019 summary judgment declaration, Mr. Schlidt was identified as T.V. John's corporate designee on damages at Plaintiffs' Rule 30(b)(6) deposition taken on March 6, 2019.[2] As part of that process, Mr. Schlidt prepared deposition Ex. 97(f), in which he concludes that Roumann Consulting was owed $441,085 in commissions, not including a hold back of $45,000 as a security/escrow deposit, $80,722 for warranty work and $66,227 for "extra" estimating charges. (*See* Halloin Aff. Ex. A.) Mr. Schlidt's November 20, 2019

---

[2] Mr. Schlidt was not originally identified as a Rule 30(b)(6) witness. T.V. John instead produced Tim Nelson, who produced Exhibit 97(f) as its response. Mr. Nelson was unable to testify regarding the contents of the exhibit. Plaintiffs refused to close the deposition without Mr. Schlidt being produced. Only then, at Plaintiffs' insistence, was Mr. Schlidt produced. (Halloin Aff. ¶ 6.) Mr. Schlidt's production on March 6, 2019 was used for Plaintiffs and Defendant's expert reports. If it was T.V. John's intention to disclose Mr. Schlidt as an expert on July 15, 2019, it certainly could have done so.

declaration provides no explanation of the contradictions with his July 29, 2019 declaration or his March 6, 2019 Rule 30(b)(6) deposition testimony (as expressed in Ex. 97(f)) (Halloin Aff. Ex. A), nor do Mr. Schlidt or T.V. John attempt to resolve disparities created by his new testimony.

The United States Supreme Court has established the standard for inconsistent affidavit/declaration submissions:

> [A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) ***without explaining the contradiction or attempting to resolve the disparity***.

*Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 805–06 (1999) (emphasis added) (external citation omitted).

Here, Mr. Schlidt's November 20, 2019 declaration contradicts Mr. Schlidt's own July 29, 2019 summary judgment declaration by providing a lower commission number. Mr. Schlidt has failed to explain the contradiction or resolve the disparity, and therefore his November 20, 2019 declaration should be disregarded as a sham declaration.

### IV. WHAT T.V. JOHN IS REALLY TRYING TO DO IS DEPRESS THE COMMISSION CALCULATION BECAUSE OF FACTORS ARISING FROM ITS OWN POST-TERMINATION MISMANAGEMENT.

T.V. John had taken the position that "the quality and extent of its own project management team . . . has no bearing on the commissions that may be owed to Plaintiffs." (T.V. John's Response to SAF 76, DN 98, p.46.) In Plaintiffs' response to T.V. John's second summary judgment brief, Plaintiffs argued, in detail, why

these factors should be considered in calculating Plaintiffs damages, and that the fact finder should instead focus on Plaintiffs' pre-termination performance and success rates for its approximately sixty pre-termination projects. Plaintiffs add that this is proper because T.V. John assumed sole control of the pending and future projects within minutes of Plaintiffs' termination, and then specifically directed that it would conclude those projects (and seek new work) without Plaintiffs' involvement. (DN 90, pp.3–15.)

Although T.V. John urged this Court to ignore the quality and extent of its own project management, repeatedly arguing it is a non-factor, that argument is inconsistent with Mr. Schlidt's commission calculation. T.V. John is actually asking this Court to consider the quality and extent of its post-termination project management and find T.V. John's post termination work has been so horribly managed that it wiped out all profits that could have been anticipated for the past two years. In fact, they argue that the commission owed to Plaintiffs today is actually less than what was contemplated as of the August 21, 2017 termination.

By way of background, Roumann Consulting and Mr. Rousse were terminated on August 21, 2017 and that this lawsuit was filed on October 13, 2017 (DN 1). In addition to the commission summary presented at T.V. John's Rule 30(b)(6) deposition (Halloin Aff. Ex. A), Mr. Schlidt prepared a summary of commissions owed as of the date of termination (Ex. 100, Halloin Ex. B), and as of the date of T.V. John's initial answer in December, 2017 (Ex. 101, Halloin Ex. C). He also prepared one that was submitted in April, 2018. (Ex. 102, Halloin Ex. D).

Mr. Schlidt and T.V. John have never disputed that commissions were earned by Roumann Consulting as of August 21, 2017. T.V. John originally argued in its counterclaims, now dismissed, that its obligation to pay commissions should be excused. T.V. John also concedes that it used Roumann Consulting's information to bid/obtain and/or complete three Kroger projects and four Menards projects having contract values of over $26,000,000 after Roumann Consulting was terminated. (*See* Halloin Aff. Ex. A, p.2 top of page, for list provided at the Rule 30(b)(6) deposition). Yet Mr. Schlidt asks this Court to accept the proposition that this $26,000,000 of new work after August 21, 2017 caused a substantial loss to T.V. John, and in doing so, not only generated no new commissions, but were so severe that they caused the total commission owed to Roumann Consulting as of <u>August 21, 2017</u> to decrease!

Mr. Schlidt's approach is revealed by a simple comparison of his July 29, 2019 summary judgment declaration's damage calculation (DN 83) and his three other earlier calculations. (Halloin Aff. Exs. B–D). If Mr. Schlidt is to be believed, this $26,000,000 of new work generated from Mr. Rousse's and Roumann Consulting's contacts after Roumann Consulting's August 21, 2017 termination generated precisely zero profit for T.V. John, as Mr. Schlidt contends that Net Profit Realized has basically remained the same, and even dipped at one point, since the August 21, 2017 termination.

| Halloin Aff. Ex. B | This document was prepared September 30, 2017. This is a summary of the commission situation as of the time of termination. Mr. Schlidt computes total as $9,721,105.76 |
|---|---|
| Halloin Aff. Ex. C | This document was prepared on December 8, 2017. Mr. Schlidt computes total as $9,586,828.33, an amount that is actually less than what existed at the time of termination. |

13

| Halloin Aff. Ex. D | This document was prepared on April 4, 2018. Mr. Schlidt computes total as $9,714,875.60. |
|---|---|
| DN 83, ¶ 3. | In Mr. Schlidt's July 29, 2019 summary judgment declaration, he states: "As of April 2019, three Projects [done by Roumann and Mr. Rousse] yielded approximately $9.7 million in total Net Profit Realized" |

Respectfully, $26,000,000 in work should have generated millions of dollars of profit, post-termination. Yet Mr. Schlidt provides zero explanation for why this profit mysteriously disappeared, and has caused the total original commission owed as of August 21, 2017 to go down.

If Mr. Schlidt is to be believed, this $26,000,000 of new work generated precisely zero profit that gets allocated to Mr. Rousse and Roumann Consulting, as the amount allocated by Mr. Schlidt in his summary judgment declaration is $2.8 million, is less than the $2,916,331.73 that Mr. Schlidt contended should have been allocated to Roumann Consulting at the time of its termination.

| Halloin Aff. Ex. B | As of September 30, 2017, Mr. Schlidt computes total as $2,916,331.73 |
|---|---|
| Halloin Aff. Ex. C | As of December 8, 2017, Mr. Schlidt computes total as $2,876,048.50. |
| Halloin Aff. Ex. D | As of April 4, 2018, Mr. Schlidt computes total as $2,914,462.58 |
| DN 83, ¶ 3. | In Mr. Schlidt's July 29, 2019 summary judgment declaration, he states: "Of the approximately $9.7 million of Net Profit Realized, approximately $2.8 million is allocated to Roumann or Rousse under the profit-sharing structure outlined in the Offer of Employment and the Independent Contractor Agreement." |

Respectfully, there are only two explanations for why $26,000,000 of new work after August 21, 2017 could generate zero profit, and in fact, a loss: (1) T.V.

John is factoring in things like claim asserted against it in 2019 by its subcontractor[3] and poor project internal management[4], even though T.V. John has told the Court the quality and extent of its own project management team has no bearing on the commissions owed to Plaintiffs (DN 98-46, response to PFF 76); or (2) T.V. John is charging hourly time for members of its staff who were not previously billed to depress the calculation of profit, something that Plaintiffs' expert previously exposed, (DN 90, p.13.) In Mr. Schlidt's November 20, 2019 declaration, he apparently advances that the once million-dollar commission owed on August 21, 2017 is now only $178,425, because T.V. John's post-termination performance has been so absolutely horrible.

The hypocrisy (and frivolousness) of T.V. John's position is apparent. On the one hand, T.V. John is arguing that "the quality and extent of its own project management team . . . has no bearing on the commissions that may be owed to Plaintiffs," and in doing so, T.V. John asks the Court to ignore Plaintiffs' superior pre-termination averages obtained over 60 projects. But then T.V. John is using Mr. Schlidt's calculations as a vehicle to submit commission calculations that consider

---

[3] A substantial claim was asserted this fall by one of T.V. John's subcontractors for project mismanagement. T.V. John has not yet produced a copy of the claim.

[4] T.V. John's counsel advised on October 9, 2019 that President Timothy Nelson was "transitioning to other duties at Symbiont . . . ." He has since left. Mr. Nelson's second in command, Chad Johnson, left to join T.V. John's competitor this week. As of the present time, all but one of the original officers and managers of T.V. John's big box construction division have left, been terminated or not renewed. T.V. John, now Symbiont Construction, Inc., also announced its intention to refocus on waste management construction work. With so much in flux, plaintiffs demanded that that steps be taken by T.V. John to safeguard the confidential bidding system used by Plaintiffs which remains in T.V. John's possession, subject to a confidentiality agreement. The day before this brief was filed, Plaintiffs learned that Mr. Johnson had already used this information at his new employer. The financial devastation that this has caused to Plaintiffs is quite severe, as this process was the development of Mr. Rousse's life's work.

T.V. John's poor performance post-termination—which not only wipe out any commissions owed for $26,000,000 of post-termination work, but reduce the amount of the commission owed as of the date of the termination on August 21, 2017. Consideration of that poor post termination performance is, of course, considering "the quality and extent of its own project management team."

Plaintiffs ask this Court to recognize the frivolousness of Mr. Schlidt's present frolic, as Mr. Schlidt is essentially asking the Court to do the very thing that T.V. John's summary judgment motion contends should not be done—consider "the quality and extent of its own project management team".

## CONCLUSION

For these reasons, Roumann Consulting requests that the Court disregard Mr. Schlidt's November 20, 2019 declaration and order the release of $401,875, plus interest accrued on that amount between July 7, 2018 and the date of release, from the funds being held on deposit by the Clerk of Court.

If the Court decides to consider Mr. Schlidt's November 20, 2019 declaration, Plaintiffs request that the Court strike Mr. Kuhn's expert report and preclude Mr. Kuhn from testifying regarding those opinions.

In addition, Plaintiffs ask that Mr. Schlidt's July 29, 2019 declaration submitted in support of T.V. John's summary judgment motion and related proposed findings of fact be struck. This necessarily requires the dismissal of T.V. John's second motion for summary judgment.

Dated December 4, 2019.

HALLOIN LAW GROUP, S.C.
Attorneys for Plaintiffs Roumann
Consulting, Inc. and Ronald Rousse


s/ Scott R. Halloin
Scott R. Halloin
State Bar No. 1024669
James J. Irvine
State Bar No. 1088726

HALLOIN LAW GROUP, S.C.
839 North Jefferson Street
Suite 503
Milwaukee, Wisconsin 53202
p 414-732-2424
f  414-732-2422
shalloin@halloinlawgroup.com
jirvine@halloinlawgroup.com

17
Case 2:17-cv-01407-LA   Filed 12/04/19   Page 17 of 17   Document 103