UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROUMANN CONSULTING INC., and
RONALD ROUSSE,

    Plaintiffs,

    v.    Case No. 17-CV-1407

T.V. JOHN & SON, INC., and
THE KROGER CO.,

    Defendants.

---

## PLAINTIFFS ROUMANN CONSULTING INC. AND RONALD ROUSSE'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF DECISION ON SUMMARY JUDGMENT

---

Plaintiffs Roumann Consulting Inc. and Ronald Rousse, by their attorneys, Halloin Law Group, S.C., submit the following brief in support of their motion for reconsideration of the Court's January 23, 2020 decision and order on summary judgment (DN 105).

### INTRODUCTION

The Court's decision and order on summary judgment made two errors, which if not corrected, would result in clear error and would cause manifest injustice to Roumann Consulting and Mr. Rousse. The first error was a legal error: the Court inadvertently imposed an element of intent into its assessment of the duty of good faith and fair dealing and resolved questions of fact related to motive on summary judgment. The second error was a factual error: the Court

inadvertently assumed that T.V. John, not Roumann Consulting, successfully bid three of the construction projects at issue in this lawsuit. Roumann Consulting and Mr. Rousse respectfully request that the Court grant this motion for reconsideration and reissue its decision and order on summary judgment.

## LEGAL STANDARD

Motions for reconsideration function "to correct manifest errors of law or fact or to present newly discovered evidence." *Keene Corp. v. Int'l Fid. Ins. Co.,* 561 F. Supp. 656, 665 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984). "A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party . . . or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Motions for reconsideration are appropriate where "the court has overlooked and thus failed to consider an aspect of the law presented by the moving party which, if left unaddressed, would result in a clear error or cause manifest injustice." *Flint v. City of Milwaukee*, No. 14-CV-333-JPS, 2015 WL 1523891, *1 (E.D. Wis. Apr. 2, 2015).

## ARGUMENT

### I. The Court Erred by Applying the Wrong Legal Standard for a Breach of the Duty of Good Faith and Fair Dealing.

The Court and the parties agree that all contracts governed by Wisconsin law carry with them an implied duty of good faith and fair dealing. (*See* DN 105, p.11.) In the Court's decision and order granting summary judgment to T.V. John, the

Court errantly imposed an element of *intentional* conduct into the standard to assess the duty of good faith:

> The implied duty of good faith prohibits one party to the contract from "intentionally and purposefully" either preventing the party from performing his part of the agreement or destroying or injuring his right to receive the fruits of the contract. *Ekstrom v. State*, 45 Wis. 2d 218, 222 (1969).

(DN 105, pp.11–12.) This Court concludes that the only way for Roumann Consulting to succeed on its breach of good faith claim would be "if TVJ, out of spite, intentionally failed to bid on jobs and intentionally botched jobs it was awarded to deprive Rousse of post-termination commissions." (DN 105, p.13.)

While the Wisconsin Supreme Court did recognize in *Ekstrom* that "intentional and purpose[ful]" conduct can form the basis for a violation of the covenant of good faith, the *Ekstrom* court also held that a violation can be found based upon the *effect* of bad faith conduct. This is clear from the entire sentence from the *Ekstrom* decision, which is a quote from *American Jurisprudence*:

> Moreover, there is an implied undertaking in every contract on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out his part of the agreement, or <u>do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract</u>. Ordinarily if one exacts a promise from another to perform an act, the law implies a counter-promise against arbitrary or unreasonable conduct on the part of the promise.

*Ekstrom v. State*, 45 Wis. 2d 218, 222, 172 N.W.2d 660, 661 (1969) (emphasis added).

Since *Ekstrom* in 1969, other Wisconsin courts have recognized that the results of negligent conduct can also constitute a breach of the covenant:

> The duty of good faith means that a party to a contract will not do anything that injures or destroys the right or ability of the other to receive the benefits under the contract.

*Budgetel Inns, Inc. v. Micros Sys., Inc.*, No. 97-CV-301, 2002 WL 32123532, *9 (E.D. Wis. Jan. 30, 2002). Specifically, Wisconsin courts have observed that "lack of diligence and slacking off," "carelessness," and "neglect" can constitute breaches of the covenant. *See Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶ 41, 301 Wis.2d 752, 734 N.W.2d 169 (lack of diligence and slacking off); *Springbrook Software, Inc. v. Douglas Cnty.*, No. 13-CV-760-slc, 2015 WL 2248449, *18 (W.D. Wis. May 13, 2015) (carelessness and neglect).

Roumann Consulting and Mr. Rousse cited these examples from the case law in their summary judgment response brief. (DN 90, pp.21–23.) But importantly, these are not the only examples of bad faith conduct that do not necessarily result from intentional conduct. In *Foseid v. State Bank*, 197 Wis. 2d 772, 796–97, 541 N.W.2d 203, 213 (Ct. App. 1995), the Wisconsin Court of Appeals recognized that a "complete catalogue of types of bad faith is impossible," but that "subterfuges and evasions violate the obligation of good faith." *Id.*

The applicable Wisconsin jury instruction confirms that the ***effect*** of the conduct alleged to have been done in violation of the duty of good faith must be assessed. Wisconsin Jury Instruction-Civil 3044 provides:

> This duty of good faith means that each party to a contract will not do something which will have the effect of injuring or destroying the (rights) (ability) of the other party to receive the benefits of the contract.

WIS JI-Civil 3044. Citing Restatement (Second) of Contracts section 325, the comment to this jury instruction confirms that "*scienter is not an element in a contract action*" and "failure to perform a contract need not be willful or negligent to constitute a breach." WIS JI-Civil 3044, comment (emphasis added).

Given the fact-intensive nature of determining whether a party breached the duty of good faith, "whether a party to a contract has breached its implied duty of good faith is a question of fact." *Schuetta v. Aurora Nat'l Life Assur. Co.*, 27 F. Supp. 3d 949, 960 (E.D. Wis. 2014). Relatedly, courts "must be cautious in granting a motion for summary judgment when resolution of the dispositive issues requires . . . determination of state of mind." *Gouger v. Hardtke*, 167 Wis. 2d 504, 517, 482 N.W.2d 84, 90 (1992) (internal citation omitted).

In the summary judgment briefing, Roumann Consulting did submit ample evidence that, at minimum, gives rise to an inference that T.V. John acted intentionally. For instance, Roumann Consulting submitted evidence that T.V. John improperly and intentionally made improper charges to project accounts, including by charging company overhead to projects (such as staff hours and T.V. John's president's time), contrary to prior and ordinary business practices, resulting in reduced project profits to Roumann Consulting. (*See, e.g.,* DN 92, ¶¶ 57–59 (citing expert's discussion of how T.V. John's staff and president's hours were inappropriately charged at uniform rates to projects).)

The evidence shows that, although T.V. John did attempt to bid projects, its bids were often unreasonably high as compared to the other bidders. (*See* DN 94, ¶ 15; DN 92, ¶ 50.) A jury could conclude that these bids were not submitted in good faith. In other words, T.V. John submitted uncompetitive bids with no intent to be awarded the projects, and instead, these bids were submitted to feign compliance with the duties under the contract. The Court appears to have concluded that T.V. John bid these post-termination projects in good faith, which is something that Roumann Consulting vigorously disputes, the evidence does not support, and is properly a question for the jury after hearing that evidence.[1]

Moreover and considering that intent is not required, Roumann Consulting submitted substantial evidence that similarly gives rise to an inference that T.V. John was not diligent, slacked off, was careless or negligent, acted arbitrarily or unreasonable, or was evasive in its obligations under the contract and its covenant of good faith. (*See* DN 92, ¶¶ 25–49.) Given the legal standard on summary judgment, where the facts must be construed in the nonmoving party's favor, granting summary judgment for T.V. John on the profit erosion claim was not appropriate. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

It is important to note that Judge Posner provided an exhaustive analysis of Wisconsin's good faith standard in *Market Street Associates Limited Partnership v.*

---

[1] Roumann Consulting also contends that T.V. John has intentionally misused Roumann Consulting's confidential information in breach of Section 8.1 of the agreement. T.V. John does not dispute that it has pursued a major new client relationship, the Dollar Store, using Roumann Consulting's confidential information, but without paying commissions. A jury could conclude that this was another intentional attempt to circumvent the agreement.

*Frey*, 941 F.2d 588, 592–98 (7th Cir. 1991), and concluded that the factual inquiry of the parties' state of mind with respect to good faith could not be determined on summary judgment. Relevant here, Judge Posner observed:

> As performance unfolds, circumstances change, often unforeseeably; the explicit terms of the contract become progressively less apt to the governance of the parties' relationship; and the role of implied conditions—and with it the scope and bite of the good-faith doctrine—grows.

*Id.* at 595–96.

Judge Posner also recognized:

> The parties to a contract are embarked on a cooperative venture, and a minimum of cooperativeness in the event unforeseen problems arise at the performance stage is required even if not an explicit duty of the contract.

*Id.* at 595 (internal citation omitted). Even if the contractual cooperation clause is viewed narrowly, the duty of good faith is broad and requires this Court to assess the effects of all of T.V. John's behavior in carrying out the agreed-upon purpose of the Independent Contractor Agreement: mutual success (to maximize profits) for T.V. John and Roumann Consulting. (*See* DN 90, p.1 fn.1.) Ample evidence of T.V. John's departure from the parties' cooperative venture was submitted on summary judgment, as discussed above.

The Court's application of the incorrect legal standard here, requiring intentional conduct and assessing intent on summary judgment, results in the manifest injustice of the rejection of Roumann Consulting's profit erosion claim for damages, in addition to the business disruption and reputation damages that were dismissed using the same rationale. Roumann Consulting and Mr. Rousse therefore

respectfully request that this Court grant their motion for reconsideration on these claims for damages.

## II. The Court Erred by Assuming That Certain of Roumann Consulting's Claimed Damages Arose From Projects Bid by T.V. John, Rather Than by Roumann Consulting.

In addition to the error on the legal standard applicable to the covenant of good faith and fair dealing, the Court also erred by assuming that certain projects at issue were bid upon by T.V. John and not by Roumann Consulting before its termination. This error with respect to the facts also causes a manifest injustice to Roumann Consulting in this case.

In discussing the contractual cooperation clause, in the Court's decision and order, the Court stated:

> For starters, the cooperation clause applies only to "ongoing projects"; it does not grant Rousse a right to be consulted on bids that TVJ submitted after his termination or to participate in the management of projects that TVJ was awarded after his termination.

(DN 105, p.14.)

Roumann Consulting (not T.V. John) bid on the Kroger West Lafayette, Kroger Jeffersonville, and Kroger Flushing Fuel Center projects before termination. The timing of the bidding of these projects was discussed in the summary judgment materials and supported with admissible evidence placed into the record. Roumann Consulting stated that these three projects were successfully bid by Roumann Consulting before termination. (Stmt. of Add'l Facts, DN 92, ¶¶ 33–34; Rousse Decl., DN 94, ¶ 12.) These projects were, therefore, "ongoing projects" at

termination, and T.V. John was required to cooperate with Roumann Consulting on these projects even after termination.

By overlooking the exact timing of these successful bids and attributing them to T.V. John, rather than Roumann Consulting, Roumann Consulting has suffered the manifest injustice of being deprived of its share of the anticipated profits of each of these projects. The profits anticipated by Roumann Consulting and the actual profits generated by T.V. John were also included in the summary judgment materials. (*See* Stmt. of Add'l Facts, DN 92, ¶¶ 35–36.) These damages to Roumann Consulting total hundreds of thousands of dollars. (*Id.*)

The damages due to Roumann Consulting related to these three projects and the others that fall into the two-year post-termination period will be dispositive to the calculations at trial of the damages due to Roumann Consulting. This was discussed in the summary judgment briefing (*see generally* DN 90, pp.3–15), and the evidence will be relevant regardless of the outcome of this motion for reconsideration. Notwithstanding the relevance of the evidence regarding these projects, however, T.V. John is taking inconsistent and hypocritical positions regarding these projects.

On the one hand, T.V. John's position is that "the extent and quality of project management [by T.V. John] has no bearing on . . . the commissions that may be owed to Plaintiffs." (DN 98, ¶ 77 (Resp.).) Thus, T.V. John's position is that what happened on the projects—its carelessness, neglect, incompetence, etc.—is irrelevant.

9

On the other hand, T.V. John's position in recent briefing on the motion to withdraw funds (DN 100) is that what happened on the projects *is* relevant. T.V. John is unilaterally reducing the commissions due to Roumann Consulting on completed projects due to losses on its unsuccessful post-termination projects. The losses on the post-termination work were apparently *so large* that they exceed the commissions that were owed at the time of termination. (*See* DN 103, pp.11–16.)

The decline in commissions due to Roumann Consulting—according to T.V. John—is evident in T.V. John's purported commission spreadsheets that it prepared. On September 30, 2017, T.V. John calculated that Roumann Consulting's share of profits (both paid and unpaid) was $2,916,331.73 (excluding other amounts due, such as Roumann Consulting's entitlement to 30% of the $150,000 contingency fund). (DN 104-2.) More than two years later, even though T.V. John alleges it booked an additional $26,000,000 of post-termination work, T.V. John contended on July 29, 2019 that Roumann Consulting's share of paid and unpaid profits had actually decreased to only $2,800,000. (DN 83, ¶ 5.)

Using data extracted from T.V. John's accounting system, Roumann Consulting's expert concluded that the amount of commissions owed on projects commenced prior to Roumann Consulting's termination was $867,740, and commissions on projects post-termination were $1,710,965. (DN 92, ¶ 64.) Roumann Consulting vigorously contends that T.V. John has intentionally overcharged project accounts by charging unsupported, irregular, and extraordinary cost entries. (DN 90, pp.13–15; DN 103, pp.14–15; DN 92, ¶¶ 57–59.)

The impact of T.V. John intentionally adding and misrepresenting the math has been to eviscerate the commissions owed to Roumann Consulting. In fact, on November 20, 2019, Mr. Schlidt contradicted his own expert to declare that the net commission owed to Roumann Consulting is now only $178,425. (DN 102, ¶ 2.) As a result, it is T.V. John's position that its performance was so poor on the $26,000,000 of new work that it not only was performed at a loss, but the loss was so severe that it obliterated profits that existed on projects completed prior to the termination.

These numbers alone evidence T.V. John's breach of the duty of good faith: T.V. John calculates a negative profit (i.e., a huge loss) on over $26 million of work. Put another way, T.V. John is arguing that its carelessness and incompetence are not relevant to determine Roumann Consulting's post-termination damages, but are relevant in determining T.V. John's losses.

## CONCLUSION

Based on the foregoing, Roumann Consulting and Mr. Rousse respectfully request that the Court grant their motion for reconsideration.

Dated February 13, 2020.

        HALLOIN LAW GROUP, S.C.
        Attorneys for Plaintiffs Roumann
        Consulting Inc. and Ronald Rousse

        s/ Scott R. Halloin
        Scott R. Halloin
        State Bar No. 1024669
        James J. Irvine
        State Bar No. 1088726

HALLOIN LAW GROUP, S.C.
839 North Jefferson Street
Suite 503
Milwaukee, Wisconsin 53202
p 414-732-2424
f  414-732-2422
shalloin@halloinlawgroup.com
jirvine@halloinlawgroup.com