UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROUMANN CONSULTING INC. and
RONALD ROUSSE,

      Plaintiffs,

v.                                           Case No. 17-CV-1407

T.V. JOHN & SON, INC., and
THE KROGER CO.,

      Defendants.

---

**PLAINTIFFS ROUMANN CONSULTING INC.'S AND RONALD ROUSSE'S
REPLY IN SUPPORT OF THEIR
RENEWED MOTION TO PRECLUDE
DEFENDANT T.V. JOHN & SON, INC.
FROM PRESENTING NON-DISCLOSED
EXPERT WITNESSES AND EXPERT OPINIONS AT TRIAL**

---

      Plaintiffs Roumann Consulting Inc. and Ronald Rousse's motion requested that the Court preclude Defendant T.V. John & Son, Inc. from calling any expert witnesses or soliciting any expert opinions at trial that were not disclosed in T.V. John's July 12, 2019 expert witness disclosure, including without limitation the new commission analysis performed by David Schlidt. Given the response filed by T.V. John, an additional request is made that the only expert it actually did disclose, Michael Kuhn, also be precluded from presenting new opinions.

      Mr. Schlidt was not involved in the preparation of commission payments prior to Roumann's termination. (*See* Rousse Decl. at ¶ 2.) The reason this motion was filed was that an entirely new commission calculation was provided by Mr. Schlidt on

March 8, 2023, during the mediation of this matter. Opposing counsel purports to provide a copy to the Court at DN 136-1, but counsel only provided the Court with the cover pages. Counsel omits that the actual calculation is 492 pages long and contains a substantial amount of new information. (Halloin Aff. at Ex. A.) Basically, one of T.V. John's (now former) owners (and former C.F.O.) does not like the calculation performed by T.V. John's disclosed expert, Michael Kuhn, and wants to provide his own. Worse, Mr. Schlidt not only wants to use his own, new report, he also wants to substitute it for Mr. Kuhn's report, **and** have Mr. Kuhn provide a new opinion.

## History

As the Court is aware, this is a case about unpaid commissions arising from an Independent Contractor Agreement that was terminated at the end of August 2017. That Agreement, dated March 26, 2015, was between Roumann and T.V. John and required all "undisputed amounts" for commissions to be paid to Roumann "**monthly**" on a "**pay when paid basis**." (See DN 136-11, p.13 of 24 at §6.3.) Upon termination, that commission arrangement was to continue unaltered for a two-year period (i.e., the fall of 2019). (See DN 136-11, p.13 of 24 at § 4.2.) T.V. John has not made a single commission payment.

Mr. Rousse is unaware of Mr. Schlidt having any role in the calculation of commissions owed to Roumann, pre-termination. (Rousse Decl. at ¶ 2.) After Roumann was terminated, it almost immediately filed suit (DN 1). T.V. John asserted four generic affirmative defenses on February 7, 2018 (DN 2), and on February 7,

2

2018, it filed counterclaims which asserted three distinct defenses that disputed whether any amount was owed (DN 37). All were summarily dismissed on August 1, 2019. (DN 86.)

Meanwhile, a data dump was made in March 2018 for both side's experts to use. That data reflected commissions owed of $867,740 as of the date of Roumann's termination in August, 2017, and an additional $1,710,965 of commissions that where anticipated to be earned during the two years after termination. (DN 69-1, p.2.) Those sums were below the historical amounts paid pre-termination, but still relatively easy to calculate.

The Court's summary judgment decision should have resolved things then and there. But rather than pay even the $867,740 that T.V. John's own records conceded were past due, and then making monthly payments going forward, T.V. John opted not to pay a single penny, and continued to create new "excuses" based upon new expenses that they have "located"—most of which were incurred long after discovery was closed.

The Court's order set the deadline for T.V. John's expert disclosure as July 12, 2019. (DN 68, p.2.) T.V. John identified a single expert witness, Michael Kuhn. (DN 117, 3/18/2022 Halloin Decl. Ex. 1.) Mr. Schlidt was not named in this disclosure, either. (*Id.*) Discovery here has been closed since March 29, 2019. (DN 51.)

After discovery was closed, T.V. John's new owners folded the company into Symbiont Construction, Inc., which then transferred the company to its engineering division, Symbiont Science, Engineering and Construction, Inc. It then let all of its

3

former T.V. John employees go, and then sold its remaining engineering division to a competitor, Mead & Hunt. Mead & Hunt then terminated everyone remaining with any connection to the old T.V. John.

### The Current Request

At the mediation of this matter, Mr. Schlidt disputed his own expert's calculation and method, adding hundreds of charges, penalties, legal fees, and other items not listed in the Independent Contractor's Agreement's formula and which were incurred long after this commission arrangement was contemplated to last. Some of the expenses were incurred by Mead & Hunt.

Respectfully, the problem here starts and ends with Mr. Schlidt—who simply does not like his own expert's analysis. But Mr. Schlidt was not disclosed as a fact witness on January 12, 2018 in Defendant T.V. John & Son, Inc.'s Initial Disclosure Pursuant to Rule 26(a)(1). (DN 136-3.) Those disclosures were never modified or amended. As such, Roumann never received a disclosure of the "subjects of [discoverable] information" that "the disclosing party may use to support its claims and defenses. . . ." (*Id.*)

The Court's scheduling order set the deadline for T.V. John's expert disclosure as July 12, 2019. (DN 68, p.2.) T.V. John identified a single expert witness, Michael Kuhn. (DN 117, 3/18/2022 Halloin Decl. Ex. 1.) Mr. Schlidt was not named in this disclosure, either. (*Id.*) Again, discovery here has been closed since March 29, 2019. (DN 51.)

4

At no time did T.V. John disclose its intention to call Mr. Schlidt as a Rule 701 or 702 witness. The two-year commission period expired in the fall of 2019. No request was made to leave discovery open for any purpose. No motion has been filed to change, alter, or modify Mr. Kuhn's opinions or modify T.V. John's Rule 26 disclosures either.

T.V. John now argues, disingenuously, that its plans have not changed. Yet it is entirely changing its plan. T.V. John argues that Mr. Kuhn will now be called to render an expert opinion regarding T.V. John's "internal accounting controls" (DN 135, pp.8–9), and that Mr. Schlidt will be called as a fact witness to testify regarding the commission calculation "historically provided to Plaintiffs throughout the parties' relationship and throughout the litigation for all projects subject to commissions under the Independent Contractor Agreement." (DN 135, p.3.) Setting aside the reconstructionist history in those statements, it appears that T.V. John's new goal is to have Mr. Kuhn testify that the methods used by Mr. Schlidt were accurate, and then to have Mr. Schlidt provide a completely new opinion as to what Roumann's commission *should* be.

The contention that this was always the disclosed plan of T.V. John is complete malarky. T.V. John states:

> Mr. Kuhn's report does not provide a calculation of damages, but instead, opines that T.V. John's internal accounting controls "are adequate to allow us to reach a conclusion that the accounting records utilized in determining the net profit realized and preparing the commission calculation are materially accurate" and that "TV John's commission calculations are reasonably accurate as of April 30, 2019." (Oettinger Decl. ¶ 10, Ex. 11. at 5, 8.)

(DN 135, pp.8–9.) Yet the "opinion" portion of Mr. Kuhn's report does not contain any conclusions about "internal accounting controls" or whether they are "adequate." (DN

5

136-11, pp.5, 8.) Instead, the opinion part of Mr. Kuhn's report provides a calculation of damages pursuant to a formula he attaches to his report ("[i]f anything is owed to Roumann, the estimated amount of the net profit realized on projects as of April 30, 2019, is $401,875"). (DN 136, p.9.) The fact that Mr. Kuhn was opining on what the commission should be, instead of accounting controls, is made clear in the section of his report titled "Matters outside the scope of this report." There, Mr. Kuhn states his report is "not offering an opinion on anything other than the net profit realized and potential commissions under the Independent Contractor Agreement as of April 30, 2019." (DN136-12.) Mr. Kuhn was to testify as to the amount of the commission owed, and was not offering an opinion on anything else.

       T.V. John now discloses that it "does still plan . . . to call Mr. Schlidt as a fact witness "as to the calculation of the commissions that are owed to Plaintiffs." (DN 135, p.2.) Again, he was not disclosed as a person likely to have discoverable information under Rule 26. Mr. Rousse does not have any recollection of Mr. Schlidt being involved. (Rousse Decl. at ¶ 2.) Mr. Schlidt's "historical" information that is based upon actual first-hand knowledge is likely limited or non-existent.

       But whether Mr. Schlidt can testify as a fact witness, in the context of this motion, is the wrong question. The Federal Rules do not distinguish between fact witnesses and expert witnesses. The issue is whether Mr. Schlidt can offer opinion

6

testimony under Rule 701[1] or 702[2]. As the Advisory Committee Notes to amended Rule 701 state, "[t]he amendment does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*. . . . The amendment makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules."

The difference between the two rules is often described as testimony that "summarizes one's experiences" is Rule 701 testimony, while testimony that "then draws conclusions about it" is rule 702 testimony. *Tribble v. Evangelides*, 670 F.2d 753, 758 (7th Cir. 2012). Put another way:

> Lay opinion testimony most often takes the form of a summary of first-hand sensory observations. *See Asplundh Mfg. Div. v. Benton Harbor Eng'g,* 57 F.3d 1190, 1196–1202 (3d Cir.1995). The opinion provides the jury with a more complete picture than would be provided by a recitation of each component fact. "Lay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *United States v. Peoples,* 250 F.3d 630, 641 (8th Cir.2001). Expert opinion, by contrast, need not be based on first-hand knowledge of the facts of the case. It brings to an appraisal of those facts a scientific, technological or other specialized knowledge that the lay person cannot be expected to possess.

---

[1] Rule 701 states: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: **(a)** rationally based on the witness's perception; **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

[2] Rule 702 states: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; **(b)** the testimony is based on sufficient facts or data; **(c)** the testimony is the product of reliable principles and methods; and **(d)** the expert has reliably applied the principles and methods to the facts of the case."

*United States of American v. Conn*, 297 F.2d 548, 554 (7th Cir. 2002).

Here, to the limited extent that Mr. Schlidt was actually involved in the processing of commissions to Roumann pre-termination, that is fact testimony subject to proper foundation. How the commission process should be applied in a post-termination environment is the land of expert testimony as it involves scientific, technological or other specialized knowledge that the lay person cannot be expected to possess. T.V. John knew this was the land of Rule 702 testimony—which is why T.V. John disclosed Mr. Kuhn as an expert on the calculation of the commissions.

Fed. R. Civ. P. 26(1)(a)(i) requires all fact witnesses and the subjects of their anticipated testimony to be disclosed. That was not done here. Rule 26(a)(2) also requires that expert witnesses be disclosed. That duty to disclose a witness *as an expert* is *not* excused when a witness who will testify as a fact witness *and* as an expert witness is disclosed as a fact witness. This is a strict but well-founded requirement." *Tribble,* 670 F.2d at 759–60. "Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial. . . . Without proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report." *Id*. Because a party may be prejudiced by an improperly disclosed expert, the sanction is severe. Under Rule 37(c)(1) "exclusion of non-disclosed evidence is automatic and mandatory ... unless non-disclosure was justified or harmless."

Discovery here has been closed since March 29, 2019. (DN 51.) This was a date the parties agreed to, and at no time did T.V. John disclose its intention to call Mr.

Schlidt as a Rule 701 or 702 witness, or disclose that it would change its calculation method. Roumann took detailed discovery of T.V. John's project records, and took twelve depositions relating to the relevant projects and their project managers located in three different states. Roumann prepared its case for trial, based upon the understanding that Mr. Kuhn and his formula represented T.V. John's "calculation of the commission." Again, some of these new costs were not even incurred by Symbiont, they were incurred by Mead & Hunt.

This motion was originally filed on March 18, 2022 (DN 116) out of an abundance of caution based on Plaintiffs' suspicion that T.V. John intended to introduce undisclosed 702 testimony at trial from Mr. Schlidt. The fact that Mr. Schlidt is critical of T.V. John's disclosed expert report is of no consequence here.

## Conclusion

For the foregoing reasons, Plaintiffs Roumann Consulting Inc. and Ronald Rousse request that the Court preclude Defendant T.V. John & Son, Inc. from calling any expert witnesses, or soliciting any expert opinions, at trial that were not disclosed in T.V. John's July 12, 2019 expert witness disclosure, including without limitation the new commission analysis performed by Mr. Schlidt or new opinions by Mr. Kuhn.

Dated August 8, 2023.

**HALLOIN LAW GROUP, S.C.**
*Attorneys for Roumann Consulting Inc. and Ronald Rousse*

s/ Scott R. Halloin
Scott R. Halloin
State Bar No. 1024669
Sheila Shadman Emerson
State Bar No. 1084786
Molly S. Fitzgerald
State Bar No. 1098534

HALLOIN LAW GROUP, S.C.
839 North Jefferson Street
Suite 503
Milwaukee, Wisconsin 53202
p 414-732-2424
f  414-732-2422
shalloin@halloinlawgroup.com
sshadmanemerson@halloinlawgroup.com
mfitzgerald@halloinlawgroup.com
S:\Clients\Roumann Consulting and Ron Rousse\Pleadings 17-CV-1407\Reply in Supp of Second Mot to Preclude.docx